UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELO SAVAGE,

                          Plaintiff,

v.                                                    9:05-CV-0857
                                                      (GLS/GHL)

R. BRUE, Nurse; and D.C. PEPPIN, Nurse,

                          Defendants.

_____

APPEARANCES:                              OF COUNSEL:

ANGELO SAVAGE, 03-A-3717
   Plaintiff, *Pro Se*
Washington Correctional Facility
Box 180
72 Lock 11 Lane
Comstock, NY 12821

HON. ANDREW M. CUOMO                       MARIA MORAN, ESQ.
Attorney General for the State of New York
   Counsel for Defendants
615 Erie Boulevard West, Suite 102
Syracuse, NY 13204-2455

GEORGE H. LOWE, United States Magistrate Judge

## REPORT-RECOMMENDATION

        This matter has been referred to me for Report and Recommendation by the Honorable

Gary L. Sharpe, United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule

N.D.N.Y. 72.3(c).  Generally, in this *pro se* civil rights complaint brought under 42 U.S.C. §

1983, Inmate Angelo Savage ("Plaintiff") alleges that two employees of the New York State

Department of Correctional Services' Franklin Correctional Facility–Nurses R. Brue and D.C.

Pepin ("Defendants")–violated his rights under the Eighth Amendment when, on May 4, 2005,

they were deliberately indifferent to his serious medical needs.  (*See generally* Dkt. No. 1.)[1]

Currently before the Court is Defendants' motion for summary judgment.  (Dkt. No. 46)  For the

reasons discussed below, I recommend that Defendants' motion for summary judgment be

granted.

## I.     BACKGROUND

### A.     Plaintiff's Complaint

Liberally construed, Plaintiff's Complaint asserts the following factual allegations.

On May 3, 2005, while sleeping at Franklin Correctional Facility ("Franklin C.F."),

Plaintiff fell out of his bunk bed, injuring his back and neck.  (Dkt. No. 1, ¶ 6, Attachment, at 2

[Plf.'s Compl.].)  On May 4, 2005, at approximately 2:05 p.m., Corrections Officer Dutell

informed Plaintiff that a nurse wanted to see him in the facility's infirmary.  (Dkt. No. 1, ¶ 6,

Attachment, at 1.)  When Plaintiff arrived at the infirmary, he found various nurses and

corrections officers gathered together, laughing.  (*Id.*)  Defendant Pepin stated, "So the paralyzed

man [can] walk."  (*Id.*)  She then instructed Plaintiff to go into a room, and started writing

something down.  (*Id.*)

After about ten minutes, a corrections sergeant and a corrections officer (both

unidentified in the Complaint) entered the room.  (*Id.*)  The sergeant ordered Plaintiff to stand

against a wall, where the corrections officer placed handcuffs on Plaintiff.  (*Id.*)  When Plaintiff

asked the corrections officer where he was going, the corrections officer replied that Plaintiff was

---

[1]     Defendants point out that, although Plaintiff's Complaint identifies the second
Defendant as "D.C. Peppin," that individual's last name is correctly spelled "Pepin."  (Dkt. No.
46, Part 2, at 1, n.1 [Defs.' Mem. of Law].)

going to "C.S.U."  (*Id*.)[2]  Immediately thereafter, Plaintiff was searched, stripped of his clothing,

given a yellow-paper gown with which to cover himself, and placed on suicide watch.  (Dkt. No.

1, ¶ 6, Attachment, at 2.)  When Plaintiff asked the corrections officer responsible for monitoring

him (who was also not identified in the Complaint) why he was on suicide watch, the corrections

officer responded that Defendant Pepin had reported that she had witnessed Plaintiff harming

himself and that Plaintiff had informed her he wanted to commit suicide.  (*Id*.)

Plaintiff's suicide watch lasted forty-eight (48) hours.  (*Id*.)  During that time, the cell in

which he was incarcerated contained no mattress on which Plaintiff could sleep.  (*Id*.)  Plaintiff

was forced to sleep on the metal frame of a bed, which was covered with only two extremely thin

blankets.  (*Id*.)  He was not provided a pillow to support his head and neck.  (*Id*.)  Because he had

injured his neck and back when falling out of his bunk bed the day before, he was in what he

characterizes as "extreme[] . . . pain."  (*Id*.)

When Defendant Brue came to check up on Plaintiff, Plaintiff informed her about the

lack of bedding and his extreme pain.  (Dkt. No. 1, ¶ 6, Attachment, at 2-3.)  Plaintiff also

---

[2]        In his Complaint, Plaintiff does not indicate to what entity or housing arrangement
the acronym "C.S.U." refers.  In his opposition papers (which may be considered when liberally
construing the allegations of a *pro se* pleading during a Rule 12[b][6] analysis), Plaintiff attaches
two documents suggesting that "C.S.U." stands for "Clinton [C.F.] Satellite [Mental Health]
Unit."  (*See* Dkt. No. 48, at 41 [Ex. E to Plf.'s Opp., attaching grievance dated 5/6/05 from
Plaintiff, using term "Clinton Satellite Unit"]; Dkt. No. 48, at 46 [Ex. J to Plf.'s Opp., attaching
memorandum dated 5/6/05 from Lori Montroy, Nurse Administrator at Clinton C.F.'s Satellite
Mental Health Unit, regarding screening of Plaintiff on same date].)  However, I notice that
several reported decisions from courts within the Second Circuit use the term "C.S.U." to refer to
a "Close Supervision Unit," which is a housing area for prisoners identified as requiring more
careful monitoring than the general prison population.  *See*, *e.g.*, *Hameed v. Mann*, 57 F.3d 217,
218 (2d Cir. 1995) (affirming judgment entered in N.D.N.Y., following jury trial before
McAvoy, C.J.).  In any event, the issue of exactly what Plaintiff intended to mean when he used
the term "C.S.U." in his Complaint is immaterial to the outcome of Defendants' motion for
summary judgment (and my analysis of the sufficiency of Plaintiff's claims).

informed Defendant Brue that he needed pain medication. (Dkt. No. 1, ¶ 6, Attachment, at 3.) Defendant Brue responded that Plaintiff would just have to adjust to the pain. (*Id*.)

In addition, while Plaintiff was in C.S.U., he asked one or more corrections officers (again, not identified in the Complaint) for (1) supplies to use to clean the toilet, which was smeared with "watery feces," and (2) toilet paper, since the cell had none. (*Id*.) The corrections officer(s) denied both requests. (*Id*.) As a result, after each of the three times that Plaintiff defecated in the cell during the aforementioned forty-eight hour period, he was unable to wipe himself and he was subjected to the strong smell of feces. (*Id*.)

Plaintiff was finally released from C.S.U. when he was evaluated by a psychologist and found to be not suicidal and not a harm to himself. (Dkt. No. 1, ¶ 6, Attachment, at 4.) As compensation for the pain and suffering that he experienced during his forty-eight hour placement on suicide watch, Plaintiff demands the sum of ten million dollars ($10,000,000). *Id*. at ¶ 9.

**B.    Defendants' Motion for Summary Judgment**

In their motion for summary judgment, Defendants argue that Plaintiff's Eighth Amendment claim against Defendants Brue and Pepin should be dismissed for essentially two reasons: (1) he has failed to allege facts plausibly suggesting, or adduce evidence establishing, that Defendant Pepin was personally involved in the alleged constitutional deprivation since it was not she but someone else who determined that Plaintiff should be placed on suicide watch; and (2) Plaintiff has failed to allege facts plausibly suggesting, or adduce evidence establishing, that he suffered a medical need that was sufficiently serious for purposes of the Eighth Amendment, or that Defendant Brue was deliberately indifferent to any such medical need. (*See*

4

*generally* Dkt. No. 46, Part 2, at 5-9 [Defs.' Mem. of Law].)

## II.     APPLICABLE LEGAL STANDARDS

### A.     Motion for Summary Judgment Under Rule 56

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted

if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining

whether a genuine issue of material[3] fact exists, the Court must resolve all ambiguities and draw

all reasonable inferences against the moving party.[4]

However, when the moving party has met its initial burden of establishing the absence of

any genuine issue of material fact, the nonmoving party must come forward with "specific facts

showing that there is a genuine issue for trial."[5]  The nonmoving party must do more than "rest

upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some

---

[3]     A fact is "material" only if it would have some effect on the outcome of the suit.
*Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[4]     *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted];
*Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[5]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a
defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere
allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as
otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue
for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be
entered against the [plaintiff].")*; see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio
Corp.*, 475 U.S. 574, 585-87 (1986).

metaphysical doubt as to the material facts."[6]  Rather, "[a] dispute regarding a material fact is *genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[7]

What this somewhat complex burden-shifting standard means is that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he fact that there has been no response to a summary judgment motion does not . . . [by itself] mean that the motion is to be granted automatically."[8]  Rather, practically speaking, the Court must (1) determine what material facts, if any, are undisputed in the record, and (2) assure itself that, based on those undisputed material facts, the law indeed warrants judgment for the defendants.[9]  However, where a plaintiff has failed to respond to a defendant's statements of material fact contained in its

---

[6]     Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . ."); *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

[7]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. March 29, 2004) [internal quotations omitted] [emphasis added].

[8]     *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).

[9]     *See Champion*, 76 F.3d at 486 ("Such a motion may properly be granted only if the facts as to which there is no genuine dispute show that . . . the moving party is entitled to a judgment as a matter of law.") [internal quotation marks and citation omitted]; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.) (stating that, where a plaintiff has failed to respond to a defendant's motion for summary judgment, "[t]he Court must review the merits of Plaintiff's claims").  This requirement (that the Court determine, as a threshold matter, that the movant's motion has merit) is also recognized by Local Rule 7.1(b)(3) of the Local Rules of Practice for this Court, which provides that "the non-moving party's failure to file or serve . . . [opposition] papers . . . shall be deemed as consent to the granting . . . of the motion . . . unless good cause is shown," *only where the motion has been "properly filed" and "the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein."*  N.D.N.Y. L.R. 7.1(b)(3) [emphasis added].

Statement of Material Facts (a/k/a its "Rule 7.1 Statement"), the facts as set forth in that

Statement will be accepted as true[10] to the extent that (1) those facts are supported by the

evidence in the record,[11] and (2) the non-moving party, if he is proceeding *pro se*, has been

specifically advised of the potential consequences of failing to respond to the movant's motion

---

[10]     *See* N.D.N.Y. L.R. 7.1(a)(3) ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.</u>").

[11]     *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[W]here the non-movant party chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial. . . . If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then summary judgment must be denied even if no opposing evidentiary matter is presented. . . . [I]n determining whether the moving party has met this burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted]; *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. 2003) (Sharpe, M.J.) ("In this case, [the plaintiff] did not file a statement of undisputed facts in compliance with Local Rule 7.1(a)(3).  Consequently, the court will accept the *properly supported* facts contained in the defendants' 7.1 statement.") [emphasis added]; *Adirondack Cycle & Marine, Inc. v. Am. Honda Motor Co., Inc.*, 00-CV-1619, 2002 U.S. Dist. LEXIS 4386, at *2-3 (N.D.N.Y. Mar. 18, 2002) (McAvoy, J.) ("Local Rule 7.1 requires a party opposing summary judgment to respond to the statement of undisputed material facts submitted by the movant.  To the extent such facts are not controverted, *the properly supported facts* will be taken as true.") [emphasis added; citation omitted]; *cf.* Fed. R. Civ. P. 83(a)(1) ("A local rule shall be consistent with . . . Acts of Congress and rules adopted under 28 U.S.C. §§ 2072 and 2075 [which include the Federal Rules of Civil Procedure] . . . ."); Fed. R. Civ. P. 56(e) (requiring that, "if the non-movant does not . . . respond [to a summary judgment motion], summary judgment, *if appropriate*, shall be entered against the non-movant," and requiring that, as a threshold matter, the motion for summary judgment must be "made *and supported* as provided in this rule") [emphasis added].

for summary judgment.[12]  (Here, I note that Plaintiffs were so advised by Defendants.)[13]

Implied in the above-stated standard is the fact that, where a non-movant fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute, even if that non-movant is proceeding *pro se*.[14]  In the event the district court chooses to conduct such an independent review of the record, any verified complaint filed by the plaintiff should be treated as an affidavit.[15]  (Here, I note that Plaintiffs' Complaint contains a verification pursuant to 28 U.S.C. § 1746.[16])  In any event, to be sufficient to create a factual issue for purposes of a summary judgment motion, an affidavit must,

---

[12]  *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

[13]  (Dkt. No. 46, Part 1.)  Furthermore, clearly Plaintiff understood these consequences since he subsequently requested (and was granted) an extension of time in which to respond to Defendants' motion.  (Dkt. No. 47.)

[14]  *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord*, *Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[15]  *See Patterson v. County of Oneida*, 375 F.3d 206, 219 (2d. Cir. 2004) ("[A] verified pleading . . . has the effect of an affidavit and may be relied upon to oppose summary judgment."); *Fitzgerald v. Henderson*, 251 F.3d 345, 361 (2d Cir. 2001) (holding that plaintiff "was entitled to rely on [his verified amended complaint] in opposing summary judgment"), *cert. denied*, 536 U.S. 922 (2002); *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1993) ("A verified complaint is to be treated as an affidavit for summary judgment purposes.") [citations omitted].

[16]  (Dkt. No. 1.)

among other things, not be conclusory.[17]   An affidavit is conclusory if, for example, its assertions

lack any supporting evidence or are too general.[18]   Finally, even where an affidavit (or verified

complaint) is nonconclusory, it may be insufficient to create a factual issue where it is (1)

"largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies

and improbabilities that no reasonable juror would undertake the suspension of disbelief

necessary to credit the allegations made in the complaint."[19]

------------------------------------

[17]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[18]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]), *cert. denied*, 474 U.S. 829 (1985); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

[19]     *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789,

**B.      Motion to Dismiss for Failure to State a Claim Under Rule 12(b)(6)**

To the extent that a defendant's motion for summary judgment under Rule 56 of the

Federal Rules of Civil Procedure is based entirely on the plaintiff's complaint,[20] such a motion is

functionally the same as a motion to dismiss for failure to state a claim under Rule 12(b)(6).  As

a result, "[w]here appropriate, a trial judge may dismiss for failure to state a cause of action upon

motion for summary judgment."  *Schwartz v. Compagnise General Transatlantique*, 405 F.2d

270, 273-74 (2d Cir. 1968) [citations omitted], *accord*, *Katz v. Molic*, 128 F.R.D. 35, 37-38

(S.D.N.Y. 1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment

motion to a Rule 12(b)(6) motion to dismiss the complaint] is proper with or without notice to

the parties.").

Moreover, even where a defendant has not advanced such a failure-to-state-a-claim

argument on a motion for summary judgment, a district court may, *sua sponte*, address whether a

---

2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified
complaint, which recounted specific statements by defendants that they were violating his rights,
was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact
with regard to all but one of prisoner's claims, although verified complaint was sufficient to
create issue of fact with regard to prisoner's claim of retaliation against one defendant because
retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose
testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia
Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was
insufficient evidence to oppose defendants' motion for summary judgment where that testimony
recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence
or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as
precedential authority but merely to show the case's subsequent history, in accordance with
Second Circuit Local Rule § 0.23).

[20]      (*See*, *e.g.*, Dkt. No. 46, Part 2, at 8-9 [Defs.' Mem. of Law, arguing, *inter alia*, that
Plaintiff's Complaint fails to contain sufficient factual allegations against Defendant Brue, and
that the Complaint's conclusory allegations fail to "state a claim"].)

*pro se* prisoner has failed to state a claim upon which relief may be granted.[21]

For these reasons, it is appropriate to briefly summarize the recently revised legal standard governing Rule 12(b)(6) motions to dismiss.  Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Rule 8(a)(2);[22] or (2) a challenge to the legal cognizability of the claim.[23]

---

[21]     The authority to conduct this *sua sponte* analysis is derived from two sources: (1) 28 U.S.C. § 1915(e)(2)(B)(ii), which provides that "the court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"; and (2) 28 U.S.C. § 1915A(b), which provides that, "[o]n review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . ."

[22]     *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

[23]     *See*  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.  . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."[24] The purpose of this rule is to "facilitate a proper decision on the merits."[25] A complaint that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[26]

---

complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-02 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

[24]     *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 [1957]); *see also Swierkiewicz*, 534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[25]     *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

[26]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history. *See, e.g., Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. &*

The Supreme Court has long characterized this pleading requirement under Rule 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[27]  However, it is well established that even this liberal notice pleading standard "has its limits."[28]  As a result, several Supreme Court and Second Circuit decisions exist, holding that a pleading has failed to meet this liberal notice pleading standard.[29]

Most notably, in the recent decision of *Bell Atl. Corp. v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it

───────────────

*Co.*, 104 F.3d 355 [2d Cir. 1996]).

[27]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[28]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[29]     *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-74 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharm.*, 125 S. Ct. at 1634-35, *Christopher v. Harbury*, 536 U.S. 403, 416-22 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-35 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-09 (2d Cir. 2004). Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 127 S. Ct. 1955, 1968-69 (2007).[30] Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim. *Id.* at 1965-74. More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true. *Id.* at 1965 [citations omitted]. What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]." *Id.*

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[31] Moreover, "[t]his standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se.*"[32] In other words, while all pleadings are to be construed

---

[30]     The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S. Ct. at 1969.

[31]     *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) [citation omitted]; *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[32]     *Hernandez*, 18 F.3d at 136 [citation omitted]; *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) [citations omitted]; *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) [citation omitted].

liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.

Indeed, "courts must construe *pro se* pleadings broadly, and interpret them to raise the strongest

arguments that they suggest."[33]  Moreover, when addressing a *pro se* complaint, generally a

district court "should not dismiss without granting leave to amend at least once when a liberal

reading of the complaint gives any indication that a valid claim might be stated."[34]  Of course,

granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already

been given a chance to amend his pleading.[35]  Moreover, an opportunity to amend should be

denied to a *pro se* plaintiff where "the problem with [plaintiff's] causes of action is substantive"

such that "[b]etter pleading will not cure it."[36]  This is because, even when a plaintiff is

---

[33]     *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[34]     *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[35]     *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2, n.14 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5, n.34 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bureau of Prisons*, 05-CV-0904, 2007 WL 37404, at *4, n.30 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Goros v. Cent. Office Review Comm.*, 03-CV-0407, 2006 WL 2794415, at *5, n.18 (N.D.N.Y. Sept. 26, 2006) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Williams v. Weaver*, 03-CV-0912, 2006 WL 2799417, at *4, n.16 (N.D.N.Y. Sept. 26, 2006)  (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[36]     *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) [citation omitted]; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) [citation omitted].

proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[37]

## III.   ANALYSIS

Generally, to prevail on a claim of deliberate indifference to a serious medical need under the Eighth Amendment, a plaintiff must show two things: (1) that the plaintiff had a sufficiently serious medical need; and (2) that the defendant was deliberately indifferent to that serious medical need.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

### A.   Plaintiff's Claim Against Defendant Pepin

I must begin by saying that I have real difficulty even liberally construing Plaintiff's allegations against Defendant Pepin as stating an Eighth Amendment claim for deliberate indifference to a serious medical need.  I acknowledge that Plaintiff has alleged facts plausibly suggesting (barely) that, on May 4, 2005, when he reported to the infirmary at Franklin C.F., Defendant Pepin, through her laughter, indicated a certain callousness.[38]  However, an allegation

---

[37]     *Stinson v. Sheriff's Dep't of Sullivan County*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz*, 2007 WL 2027912, at *2 (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins*, 2007 WL 37404, at *4 (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[38]     (Dkt. No. 1, ¶ 6, Attachment at 1 [Plf.'s Compl.].)

of callous laughter does not, in and of itself, appear to plausibly suggest deliberate indifference,[39]

which is a state of mind akin to criminal recklessess.[40]   In any event, even assuming that

Defendant Pepin was acting with deliberate indifference when Plaintiff was in the Franklin C.F.

infirmary on May 4, 2005, I cannot discern what Plaintiff's alleged serious medical need was at

that time.[41]   While he alleges that he sustained a back injury on May 3, 2005,[42] he does not allege

facts plausibly suggesting that he was in extreme pain when he was in Defendant Pepin's

---

[39]    *See Luttrell v. Nickel*, 129 F.3d 933, 936 (7th Cir. 1997) ("[Correctional
Sergeant's] failure personally to investigate [the plaintiff's] cellmate's mental state and her
response to [the plaintiff's] request with laughter did not amount to deliberate indifference.");
*Sampay v. Griffin*, 06-CV-0360, 2007 U.S. Dist. LEXIS 44111, at *3 (M.D. La. May 8, 2007)
(prison doctor's laughter at prisoner who stated he was in pain "from his head to his toes" after
his unsuccessful suicide attempt was not, in and of itself, deliberate indifference), *adopted by*
2007 U.S. Dist. LEXIS 40401 (M.D. La. June 4, 2007); *Owens v. Cuyter*, 81-CV-1722, 1989
U.S. Dist. LEXIS 8071, at *12 (E.D. Pa. July 14, 1989) ("While Dr. Dincer's alleged laughter
when the plaintiff showed him his medical ailment would seem inappropriate 'bedside manner'
on his part, this shortcoming does not rise to the level of deliberate indifference which could
constitute a constitutional deprivation."); *cf. Barad v. Comstock*, 03-CV-0736, 2005 U.S. Dist.
LEXIS 38418, at *30 (W.D.N.Y. June 30, 2005) ("[Plaintiff] alleges that defendant laughed at
him and told the guards that it was a 'false alarm' [when plaintiff complained he was going to die
from a kidney-stone attack] but plaintiff has not established that defendant wantonly intended to
cause plaintiff to suffer [in order] to establish the subjective element of the deliberate
indifference claim.").

[40]    "'The required state of mind [for a deliberate indifference claim under the Eighth
Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an
excessive risk to inmate health or safety; the official must both be aware of facts from which the
inference could be drawn that a substantial risk of serious harm exists; and he must also draw the
inference.'"  *Evering v. Rielly*, 98-CV-6718, 2001 U.S. Dist. LEXIS 15549, at *30 (S.D.N.Y.
Sept. 28, 2001) (quoting *Hemmings v. Gorczyk*, 134 F.3d 104, 108 [2d Cir. 1998]).

[41]    It bears noting that this is not a case in which a prisoner claims he was refused
suicide watch when he needed it; it is a case in which a prisoner claims that (1) he was provided
suicide watch when he did not need it and that (2) the conditions of confinement in that suicide
watch (for a period of forty-eight hours) ended up causing him further harm to an existing back
injury.

[42]    (Dkt. No. 1, ¶ 6, Attachment at 2 [Plf.'s Compl.].)

17

presence in the Franklin C.F. infirmary on May 4, 2005.[43]  Rather, he alleges that he was in extreme pain *after* he left Defendant Pepin's presence, and he was subjected to the harsh living conditions while on suicide watch at Franklin C.F.[44]  Indeed, he expressly alleges that, when he reported to the Franklin C.F. infirmary on May 4, 2005, Defendant Pepin commented on his apparent *lack of injury*.[45]  As a result, I find that, as an initial matter, Plaintiff has not even stated a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

However, even assuming that Plaintiff had stated a viable claim, he has adduced absolutely no evidence in support of that claim for purposes of Rule 56.  To the contrary, the uncontroverted record evidence indicates that (1) it was not Defendant Pepin but someone else who ordered, on May 4, 2005, that Plaintiff be placed on suicide watch, (2) to the extent that Defendant Pepin played any role whatsoever in requesting or suggesting that Plaintiff to be placed on suicide watch, her efforts were, under the circumstances, reasonably justified, and (3) even if those efforts were not reasonably justified, they were not in reckless disregard of some sort of serious medical need actually possessed by Plaintiff.

Taking this last finding (regarding the absence of a serious medical need) first, the record evidence before the Court simply does not contain any evidence that, when Defendant Pepin recommended Plaintiff for suicide watch on May 4, 2005, Plaintiff's back and neck injury was of

---

[43]        (Dkt. No. 1, ¶ 6, Attachment at 1 [Plf.'s Compl.].)

[44]        (Dkt. No. 1, ¶ 6, Attachment at 2-3 [Plf.'s Compl.].)

[45]        (Dkt. No. 1, ¶ 6, Attachment at 1 [Plf.'s Compl., alleging that Def. Pepin stated, "So the paralyzed man [can] walk."].)

such a nature as to constitute a serious medical need under the Eighth Amendment, for the reasons discussed below in Part III.B. of this Report-Recommendation.  Because there is no record evidence of a sufficiently serious medical need of which Defendant Pepin could have been deliberately indifferent when she recommended Plaintiff for suicide watch on May 4, 2005, there is no need to proceed to an analysis of whether there is any record evidence of deliberate indifference by Defendant Pepin with regard to any such medical need when she made the aforementioned recommendation.  However, in the interest of thoroughness, I will proceed to such an analysis.

In their Rule 7.1 Statement, Defendants asserted, *inter alia*, the following material facts with respect to Plaintiff's claim against Defendant Pepin, supporting each of the assertions with accurate record citations:

1.      At approximately 7:15 a.m. on May 3, 2005, Defendant Pepin and Nurse Charlene Volpe responded to Plaintiff's cell for an emergency sick call, because Plaintiff had apparently fallen off a top bunk bed, which was approximately four feet high.[46]  When they arrived, Plaintiff told them that he had had a nightmare and had hit the back of his head on a locker.[47]  Although Plaintiff complained that he was unable to move, the nurses assessed Plaintiff's condition and noted that he had sensation in his lower extremities and could, in fact, move his lower extremities.[48]

---

[46]      (Dkt. No. 46, Part 5, ¶ 4 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[47]      (*Id*.)

[48]      (*Id*.)

2.      Later that day, Plaintiff was transferred to Albany Medical Center for further evaluation because he still claimed that he could not move his legs.[49]  However, the results of multiple spine and brain x-rays and scans of Plaintiff at Albany Medical Center were normal.[50]

3.      At approximately 12:45 a.m. on May 4, 2005, Plaintiff was returned to Franklin C.F., where he was admitted to the infirmary so that he could be assessed by a facility doctor.[51]  Later that morning, at approximately 8:25 a.m., Plaintiff was discharged from the infirmary and returned to his dorm room with various special permits and restrictions.[52]

4.      Later that day, at some point between 12:00 p.m. and 3:00 p.m., a lieutenant at Franklin C.F. requested that Defendant Pepin interview Plaintiff regarding the requests that he had recently made to see a psychiatrist about his nightmares.[53]  After interviewing Plaintiff, Defendant Pepin became concerned that he might be a danger to himself.[54]  As a result, she

---

[49]      (Dkt. No. 46, Part 5, ¶ 6 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[50]      (*Id*.)

[51]      (Dkt. No. 46, Part 5, ¶ 7 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[52]      (*Id*.)

[53]      (Dkt. No. 46, Part 5, ¶ 10 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof]; *see also* Dkt. No. 46, Part 7, ¶ 7 [Pepin Affid., asserting that her shift ended at 3:00 p.m. on 5/4/05, and that, towards the end of that shift, she interviewed Plaintiff].)

[54]      (Dkt. No. 46, Part 5, ¶ 10 [Defs.' Statement of Material Facts, asserting referenced fact and not expressly providing record citations immediately following this assertion but providing such record citations elsewhere in paragraph]; *see* Dkt. No. 46, Part 7, ¶ 7 [Pepin Affid.]; Dkt. No. 46, Part 4, at 14 [Ex. A to Moran Affid., attaching, at page "13," Plf.'s Ambulatory Health Records from 5/4/05, authored by Def. Pepin].)

called the New York State Office of Mental Health ("O.M.H.") Satellite Unit at Clinton

Correctional Facility ("C.S.U.").[55]  O.M.H. staff at C.S.U. determined that Plaintiff needed to be

placed on suicide watch.[56]  Because C.S.U. did not have a bed available, C.S.U. directed that

Plaintiff be placed on special watch in a strip cell at Franklin C.F.[57]  A "strip cell" is a cell in

which an inmate is permitted to have only two matts in the cell.[58]  At approximately 3:30 p.m.,

Plaintiff was admitted to Franklin C.F.'s Special Housing Unit ("S.H.U.").[59]  After her shift

ended at 3:00 p.m., Defendant Pepin had no further interaction with Plaintiff until he was

discharged from S.H.U. on May 6, 2005.[60]

 For whatever reason, Plaintiff chose not to respond to the aforementioned factual

---

[55] (Dkt. No. 46, Part 5, ¶ 10 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[56] (Dkt. No. 46, Part 5, ¶ 10 [Defs.' Statement of Material Facts, asserting referenced fact and not expressly providing record citations immediately following this assertion but providing such record citations elsewhere in paragraph]; *see* Dkt. No. 46, Part 7, ¶ 7 [Pepin Affid.]; Dkt. No. 46, Part 6, ¶ 5 [Brue Affid.]; Dkt. No. 46, Part 4, at 14 [Ex. A to Moran Affid., attaching, at page "14," Plf.'s Ambulatory Health Records from 5/4/05, authored by Defs. Pepin and Brue].)

[57] (Dkt. No. 46, Part 5, ¶ 10 [Defs.' Statement of Material Facts, asserting referenced fact and not expressly providing record citations immediately following this assertion but providing such record citations elsewhere in paragraph]; *see* Dkt. No. 46, Part 7, ¶ 7 [Pepin Affid.]; Dkt. No. 46, Part 6, ¶ 5 [Brue Affid.]; Dkt. No. 46, Part 4, at 14 [Ex. A to Moran Affid., attaching, at page "13," Plf.'s Ambulatory Health Records from 5/4/05, authored by Defs. Pepin and Brue].)

[58] (Dkt. No. 46, Part 5, ¶ 10 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof].)

[59] (Dkt. No. 46, Part 5, ¶ 12 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[60] (Dkt. No. 46, Part 5, ¶ 25 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

assertions through the filing of a Rule 7.1 Response, despite being advised of the consequences of failing to so respond,[61] being granted a thirty (30) day extension of time in which to respond,[62] and being provided a copy of the Local Rules of Practice for this Court and two copies of the Northern District's *Pro Se* Manual.[63]   The closest Plaintiff comes to submitting such a response is when he submits an affidavit asserting several facts.[64]   However, this affidavit contains no citations to the record, nor does it even respond to Defendants' factual assertions in matching numbered paragraphs.   As a result, it does not constitute a Rule 7.1 Response.[65]

By failing to respond to the aforementioned factual assertions (which, again, are supported by the record evidence), Plaintiff has *admitted* those factual assertions under the Local Rules of Practice for this Court.[66]   As explained above in Part II.A. of this Report-

---

[61]      (Dkt. No. 46, Part 1.)  Furthermore, clearly Plaintiff understood these consequences since he subsequently requested (and was granted) an extension of time in which to respond to Defendants' motion.  (Dkt. No. 47.)

[62]      (Dkt. No. 47.)

[63]      The Clerk of Court for the Northern District of New York has provided to all correctional facilities in New York State (including Franklin C.F.) copies of the Northern District's *Pro Se* Manual and Local Rules of Practice.  As Plaintiff was advised by the Court on or about August 31, 2006, if he wanted an additional copy of the *Pro Se* Manual or Local Rules of Practice, he could obtain them from the Clerk upon request.  (Dkt. No. 36, at 1-2, n. 1 [Order of Magistrate Judge Lowe, dated 8/31/06].)  Plaintiff was mailed an additional copy of the *Pro Se* Manual on January 30, 2006.  (*See* Dkt. Entry dated 1/30/06.)

[64]      (Dkt. No. 48, at 2-5 [Plf.'s Response to Defs.' Motion, attaching Plf.'s Affid.].)

[65]      *See* N.D.N.Y. L.R. 7.1(a)(3) ("The non-movant's [Rule 7.1] response shall mirror the movant's [Rule 7.1] Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs.  Each denial shall set forth a specific citation to the record where the factual issue arises.").

[66]      *Id.* ("<u>Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.</u>") [emphasis in original].

Recommendation, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[67]  Under the circumstances, I decline to perform an independent review of the record to find proof of a factual dispute.

Having said that, I cannot help note several pieces of evidence that I came across during my consideration of Plaintiff's Opposition to Defendants' Motion.  Specifically, I note that several of the pieces of evidence adduced by Plaintiff, as part of the four-page affidavit and 15-page stack of exhibits submitted with his Opposition Memorandum of Law, do not controvert the above-stated factual assertions, but actually support those factual assertions.[68]  For example, the aforementioned pieces of evidence adduced by Plaintiff indicate that (1) between April 25, 2005, and May 2, 2005, he wrote twice to a psychologist, requesting to speak to him because of nightmares,[69] (2) on May 3, 2005, when he fell out of his bed and injured himself, the fall was caused by a nightmare,[70] (3) on May 4, 2005, Defendant Pepin's interview of Plaintiff (which led

---

[67]     *See Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord, Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir. Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[68]     (*See* Dkt. No. 48, at 2-5, 33-48 [Plf.'s Response to Defs.' Motion].)

[69]     (Dkt. No. 48, at 3-4 [Plf.'s Affid., ¶¶ 4-6]; *see also* Dkt. No. 48, at 48 [Ex. L to Plf.'s Opp., attaching letter dated 5/2/05 from Plaintiff to the Psychiatric Department at Franklin C.F., requesting, for the second time, a consultation due to his nightmares].)

[70]     (Dkt. No. 48, at 3 [Plf.'s Affid., ¶ 7].)

to her telephone call to C.S.U., suggesting that Plaintiff might hurt himself) was requested by a lieutenant at Franklin C.F.,[71] and (4) at that interview, Defendant Pepin believed that Plaintiff was acting "bizarre."[72]

At its core, Plaintiff's argument, with regard to his claim against Defendant Pepin, is that she *knew* she was wrong when, on May 4, 2005, she telephoned C.S.U., suggesting that Plaintiff might hurt himself.[73]   The problem is that Plaintiff has offered no evidence (only allegations) in support of this allegation that Defendant Pepin made a recommendation to C.S.U. that she *knew* was wrong.  The closest he comes is when he attaches to his Opposition a copy of a grievance he filed on May 6, 2005, in which he alleges that Defendant Pepin (1) chastised Plaintiff for needlessly costing the State of New York "millions of dollars" in CAT scans and x-rays by claiming he could not move his legs when, in fact, he could, (2) asked him if he was homosexual, and (3) referred to him by use of a racial epithet.[74]  However, these unsworn allegations (deplorable as the alleged conduct may be) are not *admissible evidence*,[75] much less admissible

---

[71]     (Dkt. No. 48, at 44 [Ex. H to Plf.'s Opp., attaching Response to Grievance No. FKN 6503-05].)

[72]     (Dkt. No. 48, at 45 [Ex. I to Plf.'s Opp., attaching Screening / Admission Note dated 5/6/05, stating, "referral states pt was acting bizarre."].)

[73]     (Dkt. No. 38, at 11-12, 16, 18-27 [Plf.'s Mem. of Law at pages "7," "8," "11," "13-22"].)

[74]     (Dkt. No. 48, at 38-40 [Ex. E to Plf.'s Opp., attaching grievance].)

[75]     As an initial matter, such unsworn claims are not *evidence* of the events giving rise to the claims at all but mere *allegations*, which are always insufficient to create a question of fact for purposes of summary judgment.  *See* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . ."); *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange

evidence of a *knowingly false* recommendation by her that he might be a danger to himself. Similarly, Plaintiff's brief assertion, in his sworn Complaint, that Defendant Pepin laughed at him when he walked into the infirmary (after claiming he could not move) is not evidence of a *knowingly false* recommendation by her that he might be a danger to himself.[76]  Nor is his vague assertion, in the affidavit that he attaches to his Opposition, that Defendant Pepin "antagonised" [sic] Plaintiff during their meeting on May 4, 2005, evidence of a *knowingly false* recommendation by her that he might be a danger to himself.[77]

What Plaintiff is left with is merely a few shreds of evidence indicating that what he

---

of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings"); *see, e.g.*, *Mays v. Rhodes*, 255 F.3d 644, 648 (8th Cir. 2001) ("unsworn accounts [of events] found in grievances forms filed by [prison] inmates" did not constitute evidence for purposes of motion for summary judgment) [citations omitted]; *Boyd v. Pork*, 01-CV-7957, 2003 U.S. Dist. LEXIS 7485, at *19 (N.D. Ill. Apr. 30, 2003) ("[The prisoner's] statement in the grievance is unsworn and of no evidentiary value [for purposes of the defendant's motion for summary judgment].");  *cf. David v. Lester*, 156 F. Supp.2d 588, 592, n.6 ("These unsworn grievance responses cannot be considered evidence from either party as to what actually happened or why.  At the most, they are evidence as to the answers that [the prisoner] received to his grievances.").  In any event, even if such unsworn claims did somehow constitute evidence, they could not be used for purposes of summary judgment because they are *inadmissible* at trial as hearsay.  *See* Fed. R. Civ. P. 56(e) (requiring summary judgment decisions to be based on matters that would be "admissible in evidence"); Fed. R. Evid. 801(c) ("'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."); Fed. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress."); *see, e.g.*, *Jordan v. Van Winkle*, 04-CV-0647, 2006 U.S. Dist. LEXIS 76733, at *7-8 (N.D. Ind. Oct. 6, 2006) (prisoner's "unsworn grievances" were not able to create question of fact for purposes of summary judgment since they were not admissible to prove truth of statements contained in those grievances).

[76]     (Dkt. No. 1, ¶ 6, Attachment, at 1 [Plf.'s Verified Compl.].)

[77]     (Dkt. No. 48, at 3 [Plf.'s Affid., ¶ 7].)

acknowledges was Defendant Pepin's "diagnostic impression" of him on May 4, 2005,[78] may

have been mistaken.  However, a mere disagreement with a medical diagnosis is not actionable

under the Eighth Amendment.[79]  Plaintiff appears to acknowledge that this is the nature of his

claim when he alleges in a grievance that Defendant Peppin is liable for negligence.[80]

Negligence, like a mere disagreement with a medical diagnosis, is not actionable under the

Eighth Amendment.[81]

Finally, it is important to note that Plaintiff appears to fundamentally misconstrue

Defendants' burden on their motion for summary judgment, which is not to adduce evidence of a

material fact, as he argues, but to demonstrate the *absence* of a question of material fact.[82]  It is

*he* who has to adduce evidence in support of his claim of deliberate indifference to a serious

medical need, and he has not done so.

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim

against Defendant Pepin for failure to state a claim under Rule 12(b)(6) and, in the alternative,

---

[78]    (*See* Dkt. No. 38, at 18 [Plf.'s Mem. of Law at page "13"].)

[79]    .*See Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998) ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation.").

[80]    (Dkt. No. 48, at 40 [Ex. E to Plf.'s Opp., attaching grievance, the end of which alleges that the "Nurse Administration," including Defendant Pepin, acted with "neglegence" [sic], with regard to what they told a psychologist].)

[81]    *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

[82]    (Dkt. No. 38, Plf.'s Mem. of Law at 16.)

for failure to adduce evidence sufficient to create a question of fact under Rule 56.

### B.     Plaintiff's Claim Against Defendant Brue

I must again begin my analysis by saying that I have difficulty even liberally construing

Plaintiff's allegations against Defendant Brue as stating an Eighth Amendment claim for

deliberate indifference to a serious medical need.  For the sake of argument, I will assume that

the "extreme[] . . . pain" that Plaintiff allegedly experienced, as a result of his being forced to

stay in a cell with no mattress or pillow even though he had a back and neck injury,[83] constituted

(barely) a sufficiently serious medical need for purposes of the Eighth Amendment–although this

fact is far from certain.[84]  This uncertainty is particularly magnified when one considers the

relatively brief duration of the pain (i.e., forty-eight hours), and the rather vague and conclusory

nature of the alleged "extreme[] . . . pain" (which was not alleged to be "constant," "shooting,"

"throbbing," "spasmodic," "debilitating," "muscular," "spinal," "lower," "upper," or any other

adjectives commonly used by prisoner-plaintiffs to describe back pain).[85]

---

[83]      (Dkt. No. 1, ¶ 6, Attachment, at 2-3.)

[84]      *See Cain v. Jackson*, 05-CV-3914, 2007 WL 2193997, at *1, 6 (S.D.N.Y. July 27, 2007) (prisoner's degenerate disc disease in her cervical spine, which was compounded when she fell from her cell bunk and injured her back, was not "sufficiently serious" to implicate Eighth Amendment); *Salaam v. Adams*, 03-CV-0517, 2006 WL 2827687, at *10 (N.D.N.Y. Sept. 29, 2006) (Decision and Order of Kahn, J., adopting Report-Recommendation of Lowe, M.J.) (prisoner's sporadic and moderate complaints of lower back pain, even when considered in conjunction with prisoner's sporadic complaints of gastrointestinal problem, were not sufficiently serious for purposes of Eighth Amendment, as a matter of law); *Rodriguez v. Mercado*, 00-CV-8588, 2002 WL 1997885, at *2-3, 8 (S.D.N.Y. Aug. 28, 2002) (prisoner's back pain and migraines not "sufficiently serious" to implicate Eighth Amendment); *Gomez v. Zwillinger*, 94-CV-8739, 1998 U.S. Dist. LEXIS 17713, at *16-17 (S.D.N.Y. Nov. 6, 1998) (prisoner's back pain and discomfort not sufficiently serious).

[85]      *See Hayes v. N.Y.S. D.O.C. Officers*, 97-CV-7383, 1998 WL 901730, at *8 (S.D.N.Y. Dec. 28, 1998) (Mukasey, J.) (granting defendants' motion to dismiss, in part because

In any event, the more serious problem is that it appears extremely doubtful that Plaintiff has alleged facts plausibly suggesting that Defendant Brue possessed a sufficiently culpable state of mine–which, again, is akin to criminal reckless–with regard to that medical condition.  Rather, Plaintiff has alleged facts plausibly suggesting that (1) he stayed in that cell for only forty-eight (48) hours, (2) during that stay, he was provided two thin blankets (which could have been balled up into a pillow), (3) during that stay, he was closely supervised by corrections officers, and he was, in fact, visited at least once by a nurse (i.e., Defendant Brue), (4) when he told Defendant Brue that he was "extremely in pain" (due to his recently sustained back and neck injury and the inadequate sleeping conditions in C.S.U.) and he requested pain medication, Defendant Brue told Plaintiff that he would simply have to "adjust to it," and (5) indeed, when Defendant Brue made that statement to Plaintiff, Plaintiff had been placed, by corrections employees other than Defendant Brue, in C.S.U., a housing arrangement that involved the living conditions that Plaintiff described.[86]  At *most*, Plaintiff has alleged facts plausibly suggesting a hint of negligence by Defendant Brue, which is insufficient to render a defendant liable under the Eighth Amendment.  As the Second Circuit has explained,

---

prisoner's eye condition was "conclusory" in that he alleged merely that his "eye was in pain, tearing, and [his] vision was becoming worse," but not that his condition significantly affected his daily activities, or that he experienced "chronic and substantial pain").

[86]      (Dkt. No. 1, ¶ 6, Attachment, at 2-3.)

> It must be remembered that the State is not constitutionally obligated, much as it may be desired by inmates, to construct a perfect plan for [medical] care that exceeds what the average reasonable person would expect or avail herself of in life outside the prison walls.  [A] correctional facility is not a health spa, but a prison in which convicted felons are incarcerated.  Common experience indicates that the great majority of prisoners would not in freedom or on parole enjoy the excellence in [medical] care which plaintiff[] understandably seeks . . . .  We are governed by the principle that the objective is not to impose upon a state prison a model system of [medical] care beyond average needs but to provide the minimum level of [medical] care required by the Constitution. . . .  The Constitution does not command that inmates be given the kind of medical attention that judges would wish to have for themselves . . . .  The essential test is one of medical necessity and not one simply of desirability.

*Dean v. Coughlin*, 804 F.2d 207, 215 (2d Cir. 1986) [internal quotations and citations omitted].

However, even assuming that Plaintiff had stated a viable claim of deliberate indifference to a serious medical need, he has adduced absolutely no evidence, for purposes of Rule 56, in support of that claim.  To the contrary, in their Rule 7.1 Statement, Defendants asserted, *inter alia*, the following material facts with respect to Plaintiff's claim against Defendant Brue, supporting each of the assertions with accurate record citations:

1.      At approximately 7:15 a.m. on May 3, 2005, two nurses (other than Defendant Brue) responded to Plaintiff's cell for an emergency sick call, because Plaintiff had apparently fallen off a top bunk bed, which was approximately four feet high.[87]  When they arrived, Plaintiff told them that he had fallen out of his bed and had hit the back of his head on a locker.[88]  Although Plaintiff complained that he was unable to move and had lower back pain, the nurses

---

[87]      (Dkt. No. 46, Part 5, ¶ 4 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[88]      (*Id*.)

assessed Plaintiff's condition and noted the following, in pertinent part: (1) he had positive pedal pulses; (2) he had good circulation, movement, sensation and temperature in his lower extremities; (3) he had no contusions to the back of his head; (4) he was alert and oriented as to person, place and time; (5) he showed no signs of a concussion; (6) his pupils were round and reactive to light; (7) he had no vision changes; and (8) he denied nausea or vomiting.[89]

      2.     Later that day, Plaintiff was transferred to the Albany Medical Center for further evaluation because he still claimed that he could not move his legs.[90]  However, the results of multiple spine and brain x-rays and scans of Plaintiff at Albany Medical Center were normal.[91]

      3.     At approximately 12:45 a.m. on May 4, 2005, Plaintiff was returned to Franklin C.F., where he was admitted to the infirmary so that he could be assessed by a facility doctor.[92] At that time, Plaintiff denied any back pain, had a full range of motion in all his extremities, and was able to ambulate unassisted.[93]  Later that morning, at approximately 8:25 a.m., Plaintiff was discharged from the infirmary and returned to his dorm room with various special permits and restrictions.[94]

      4.     Later that day, at approximately 3:30 p.m., Plaintiff was admitted to the Franklin

---

[89]     (*Id.*)

[90]     (Dkt. No. 46, Part 5, ¶ 6 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[91]     (*Id.*)

[92]     (Dkt. No. 46, Part 5, ¶ 7 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[93]     (*Id.*)

[94]     (*Id.*)

C.F. S.H.U..[95]  During his admission, Plaintiff was interviewed by Defendant Brue.[96]  During that interview, Plaintiff informed Defendant Brue that, in pertinent part, he had "old" back and pinky finger injuries, but denied having any "new" injuries.[97]  Moreover, Defendant Brue observed no injuries to Plaintiff.[98]  Finally, Plaintiff denied that he was on any medication.[99]

5.     A little more than an hour later, at approximately 4:45 p.m., it was noted by a corrections officer that Plaintiff was "alert" and eating dinner.[100]

6.     A little less than three hours later, at approximately 7:30 p.m., Plaintiff requested to speak with someone from the facility's medical department, and Defendant Brue responded to the request.[101]  During the conversation that ensued, Plaintiff stated, in pertinent part, that his bed

---

[95]     (Dkt. No. 46, Part 5, ¶ 12 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[96]     (Dkt. No. 46, Part 5, ¶ 13 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[97]     (Dkt. No. 46, Part 5, ¶ 13 [Defs.' Statement of Material Facts, asserting referenced fact and not expressly providing record citations immediately following this assertion but providing such record citations elsewhere in paragraph]; *see* Dkt. No. 46, Part 6, ¶¶ 5, 6 [Brue Affid.]; Dkt. No. 46, Part 4, at 15 [Ex. A to Moran Affid., attaching, at page "14," Plf.'s Ambulatory Health Record on S.H.U. Admission on 5/4/05, authored by Def. Brue].)

[98]     (*Id.*)

[99]     (*Id.*)

[100]     (Dkt. No. 46, Part 5, ¶ 14 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[101]     (Dkt. No. 46, Part 5, ¶ 14 [Defs.' Statement of Material Facts, asserting referenced facts and providing record citations in support thereof]; *see also* Dkt. No. 46, Part 4, at 21 [Ex. B to Moran Affid., attaching page "383" of handwritten log of notes and observations made by corrections officer on 5/4/05, indicating that, at approximately 7:20 p.m., Plaintiff requested to see someone from the facility's medical department, which was promptly notified of that fact].)

was too hard and hurt his back.[102]  Defendant Brue responded that he was on suicide watch and

would be seeing someone from the psychiatric department the following day.[103]

7.     At 8:00 a.m. on May 5, 2005, Plaintiff was seen by a nurse (other than Defendant

Brue), who noted that he had stated to her, "I feel better – I have felt better since yesterday."[104]

8.     Defendant Brue worked the 2:00 p.m. to 10:00 p.m. shift at Franklin C.F. on May

5, 2005.[105]  She did not personally observe Plaintiff on that date.[106]  However, that evening, she

made an entry in Plaintiff's Ambulatory Health Records that a Dr. Whalen (fromt Clinton C.F.)

would like Plaintiff evaluated at "CSU"–referring to a satellite unit of the New York State Office

of Mental Health, located at Clinton C.F.[107]  At 7:15 p.m., Defendant Brue called Dr. Whalen's

office to make an appointment, and a nurse in Dr. Whalen's office asked Defendant Brue if

---

[102]     (Dkt. No. 46, Part 5, ¶ 15 [Defs.' Statement of Material Facts, asserting referenced fact and not expressly providing record citations immediately following this assertion but providing such record citations elsewhere in paragraph]; *see* Dkt. No. 46, Part 6, ¶ 7 [Brue Affid.]; Dkt. No. 46, Part 4, at 16 [Ex. A to Moran Affid., attaching, at page "15," Plf.'s Ambulatory Health Record from 5/4/05, authored by Def. Brue].)

[103]     (Dkt. No. 46, Part 5, ¶ 15 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[104]     (Dkt. No. 46, Part 5, ¶ 17 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof].)

[105]     (Dkt. No. 46, Part 5, ¶ 19 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof].)

[106]     (Dkt. No. 46, Part 5, ¶ 21 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof].)

[107]     (Dkt. No. 46, Part 5, ¶¶ 10, 20 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof]; *see also* Dkt. No. 46, Part 4, at 17 [Ex. A to Moran Affid., attaching, at page "16," Plf.'s Ambulatory Health Record from 5/5/05, authored by Def. Bru, indicating that Dr. Whalen worked at Clinton C.F.)

someone in the infirmary could call back the next morning to make the arrangements for the evaluation.[108]

9.      At approximately 11:48 a.m. the next morning (May 6, 2005), Plaintiff was taken to C.S.U. for a mental health evaluation.[109]  At approximately 12:30 p.m., he was returned to the Franklin C.F. S.H.U. for special watch.[110]  At approximately 12:38 p.m., Plaintiff was escorted to the Franklin C.F. infirmary, where he spoke to Defendant Brue.[111]  During that conversation, he told Defendant Brue that he loved himself too much to hurt himself, and he denied any intent to harm others.[112]  Finally, at approximately 1:00 p.m., Plaintiff was cleared from special watch by a mental health professional (Sarah Hicks) at C.S.U., and he was returned to his dormitory.[113]

As stated above in Part III.A. of this Report-Recommendation, Plaintiff chose not to respond to the aforementioned factual assertions through the filing of a Rule 7.1 Response,

---

[108]      (Dkt. No. 46, Part 5, ¶ 20 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[109]      (Dkt. No. 46, Part 5, ¶ 22 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[110]      (Dkt. No. 46, Part 5, ¶ 22 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citation in support thereof].)

[111]      (Dkt. No. 46, Part 5, ¶ 23 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

[112]      (Dkt. No. 46, Part 5, ¶ 23 [Defs.' Statement of Material Facts, asserting referenced fact and not expressly providing record citations immediately following this assertion but providing such record citations elsewhere in paragraph]; see Dkt. No. 46, Part 6, ¶ 10 [Brue Affid.]; Dkt. No. 46, Part 4, at 18 [Ex. A to Moran Affid., attaching, at page "17," Plf.'s Ambulatory Health Record from 5/6/05, authored by Def. Brue].)

[113]      (Dkt. No. 46, Part 5, ¶ 24 [Defs.' Statement of Material Facts, asserting referenced fact and providing record citations in support thereof].)

despite being advised of the consequences of failing to so respond, being granted a thirty (30) day extension of time in which to respond, and being provided a copy of the Local Rules of Practice for this Court and two copies of the Northern District's *Pro Se* Manual.  The closest Plaintiff comes to submitting such a response is when he submits an affidavit asserting several facts. However, this affidavit contains no citations to the record, nor does it even respond to Defendants' factual assertions in matching numbered paragraphs.  As a result, it does not constitute a Rule 7.1 Response.

By failing to respond to the aforementioned factual assertions (which, again, are supported by the record evidence), Plaintiff has *admitted* those factual assertions under the Local Rules of Practice for this Court.  As explained above in Part II.A. of this Report-Recommendation, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.  Under the circumstances, I decline to perform an independent review of the record to find proof of a factual dispute.

Based on the above-stated undisputed facts, I find that a rational fact finder could not conclude that Plaintiff was suffering from a sufficiently serious medical condition, when, at approximately 7:30 p.m. on May 4, 2005, Plaintiff complained to Defendant Brue, that his bed was too hard and hurt his back.  The sort of medical need contemplated by the first prong of the above-stated two-pronged test governing claims under the Eighth Amendment is "a condition of urgency, one that may produce death, degeneration or *extreme* pain."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994) [citation omitted; emphasis added].  The condition that Plaintiff experienced while under suicide watch at Franklin C.F. was (again, based on the above-stated undisputed facts) simply none of these things.

34

Nor could a rational fact finder conclude, based on the above-stated undisputed facts, that Defendant Brue possessed a mental state akin to criminal recklessness when she responded to Plaintiff's aforementioned complaint.  She simply had no reason to believe that he was actually in the sort of *extreme* pain contemplated by the Eighth Amendment.  Moreover, she promptly responded to his request to speak to a nurse on May 4, 2005, and she diligently communicated with Dr. Whalen's office on May 5, 2005, to facilitate a determination of whether or not Plaintiff should remain under suicide watch.[114]  Indeed, based on the above-stated undisputed facts,  I have trouble divining even any evidence of *negligence* by her with respect to Plaintiff's medical care.

While my findings need no further support, I note that they are in fact further supported by several facts: (1) none of the several Ambulatory Health Records included in the record contain any notations by nurses that Plaintiff complained to them of any pain while he was under suicide watch in the Franklin C.F. S.H.U. (from May 4, 2005, to May 6, 2005) other than his statement to Defendant Brue at approximately 7:30 p.m. on May 4, 2005, that the bed was so hard that it hurt his back;[115] (2) the record indicates that, at approximately 4:50 p.m. on May 5, 2005, Plaintiff was observed lying on his bunk, in which position he was able to shake his head

---

[114]    I note that, as recognized by the Supreme Court, "'the Constitution does not mandate comfortable prisons,' . . . and conditions that are 'restrictive and even harsh . . . are part of the penalty that criminal offenders pay for their offenses against society.'"  *Davidson v. Murray*, 371 F. Supp.2d 361, 370 (W.D.N.Y. 2005) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 [1981]).

[115]    (*See generally* Dkt. No. 46, Part 4, at 14-18 [Ex. A to Moran Affid., attaching, at pages "14" through "17," Plf.'s Ambulatory Health Record from 5/4/05 to 5/6/05, authored by various nurses, including Def. Brue].)

in response to a question;[116] and (3) the record indicates that, during the early morning hours of May 6, 2005, Plaintiff was observed by a nurse to be sleeping.[117]

Finally, I note that Plaintiff's allegations about the lack of toilet supplies while under suicide watch at Franklin C.F. are, while dismaying, wholly immaterial to his inadequate-medical-care claim against Defendant Brue since (1) the Complaint contains no allegation plausibly suggesting, and the record contains no evidence establishing, that the lack of toilet supplies in any way contributed to his alleged serious medical condition, (2) in any event, the Complaint contains no allegation plausibly suggesting, and the record contains no evidence establishing, that he ever communicated such complaints to her, and (3) in any event, the Complaint contains no allegation plausibly suggesting, and the record contains no evidence establishing, that she, as a nurse, had the authority to provide toilet-cleaning supplies to Plaintiff while he was under suicide watch at Franklin C.F. (a housing arrangement in which prisoners are, among other things, deprived of various materials that they might use to harm themselves).

As a result, I recommend that the Court dismiss Plaintiff's Eighth Amendment claim against Defendant Brue for failure to state a claim under Rule 12(b)(6) and, in the alternative, for failure to adduce evidence sufficient to create a question of fact under Rule 56.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion for summary judgment (Dkt. No. 46) be **<u>GRANTED</u>**.

---

[116]    (Dkt. No. 46, Part 4, at 17 [Ex. A to Moran Affid., attaching, at page "16," Plf.'s Ambulatory Health Record from 5/5/05, authored by an unidentifiable nurse].)

[117]    (Dkt. No. 46, Part 4, at 18 [Ex. A to Moran Affid., attaching, at page "17," Plf.'s Ambulatory Health Record from 5/6/05, authored by an unidentifiable nurse].)

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: September 19, 2007
      Syracuse, New York

George H. Lowe
United States Magistrate Judge

37